IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-100-FL

| | | |
|---|---|---|
| NOA, LLC and INSAF NEHME, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ATLANTIC CLOTHING, LLC and | ) | |
| INTERNATIONAL RAGS, LTD, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on defendant Atlantic Clothing, LLC's ("Atlantic") motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3) for lack of personal jurisdiction and improper venue, or in the alternative, motion to transfer venue (DE 8), and on defendant International Rags, LTD's ("IRL") motion to dismiss pursuant to Rule 12(b)(2) and (3) for lack of personal jurisdiction and improper venue (DE 21). These motions have been fully briefed. For reasons given more particularly below, both motions are DENIED. Where the case has been stayed pending decision on these motions, said stay is LIFTED.

**STATEMENT OF THE CASE**

Plaintiff NOA, LLC ("NOA") is a limited liability company organized under the laws of North Carolina, with its principal place of business in North Carolina. Plaintiff NOA's sole member is plaintiff Insaf Nehme ("Nehme"), a North Carolina resident. Defendants Atlantic and IRL are Texas limited liability companies with their principal places of business in Texas. Defendants are

engaged in the business of selling used clothing in bulk.  Plaintiff NOA was a customer of defendants.

On February 20, 2014, plaintiff filed complaint against defendants asserting claims for breach of contract, tortious interference with contract, and seeking a declaratory judgment that plaintiffs are not obligated to pay defendants any sums of money on certain invoices issued to plaintiff NOA.  Defendants responded by filing the instant motions, and issues raised are now ripe for ruling.

## STATEMENT OF FACTS

As discussed more below, in disposing of a motion to dismiss for lack of personal jurisdiction, where the court does not hold an evidentiary hearing "the plaintiff need only make a prima facie showing of personal jurisdiction." Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 396 (4th Cir. 2003).  " In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." Id.  Accordingly, where facts are disputed and supported by evidence, the court accepts plaintiffs' version thereof as true for purposes of the instant motion.

As noted above, defendants are Texas entities engaged in the bulk sale of used clothing. Defendants acquire, sort, and ship this clothing from Texas.  Faran Momin Aff. ¶ 2; Nooruddin Momin Aff. ¶ 4.  Defendants are not registered to conduct any business in North Carolina, nor do they have any offices, bank accounts, or facilities in North Carolina, nor do any of defendants' employees, agents, or members reside in North Carolina.  Faran Momin Aff. ¶ 3; Nooruddin Momin Aff. ¶ 3.

In 2003, plaintiff Nehme met Amirali Momin, the owner and President of IRL.[1] Ehssan Nehme Aff. ¶ 5. As a result of negotiations between the two, plaintiff NOA submitted orders for purchase of used clothing to International Rag N Roll, a company owned and operated by Amirali Momin. Id. ¶¶ 7-9. These clothes were to be shipped to River Way Stores, a company in Liberia owned by members of plaintiff Nehme's family. Id. Amirali Momin subsequently introduced plaintiff Nehme to other members of the Momin family who also operated businesses engaged in the sale of used clothing. Id. ¶ 10. These businesses included defendants Atlantic and IRL. Id.

Plaintiffs entered into a business relationship with defendant Atlantic in or around 2005. Id. ¶ 14. According to plaintiffs, this relationship took the form of a contract between plaintiff NOA and defendant Atlantic for defendant Atlantic to acquire and ship used clothing to River Way Stores on behalf of plaintiff NOA.[2] Compl. ¶ 9. None of defendant Atlantic's employees, agents, or members traveled to North Carolina to discuss the purchase of used clothing by plaintiffs from defendant Atlantic. Faran Momin Aff. ¶ 5. Amirali Momin approached plaintiff NOA in 2008 and suggested that it enter into a similar business relationship with defendant IRL, and that same year

---

[1] Plaintiffs state that Amirali Momin is also a managing member of defendant Atlantic. See Ehssan Nehme Aff. ¶ 7. It appears there may be some confusion or dispute regarding the positions held by the Amirali Momin. As an exhibit to its reply in support of its motion, defendant Atlantic filed the Supplement Affidavit of Faran Momin. Therein, defendant Atlantic states that there are two Amirali Momins involved with defendants, and that the Amirali Momin plaintiffs refer to is Amirali W. Momin. Faran Momin Suppl. Aff. ¶¶ 4-5. For purposes of the instant motions, the court assumes that plaintiffs' contact was with Amirali W. Momin. Defendant Atlantic further states that it is Amirali Peermohammed Momin, and not Amirali W. Momin, who is a managing member of defendant Atlantic, and that Amirali W. Momin was never a managing member, owner, partner, or employee of defendant Atlantic. Id. It is unclear whether plaintiffs would dispute that Amirali W. Momin is an officer, owner, or employee of defendant Atlantic. However, it is not necessary to the court's holding that he hold any position with defendant Atlantic.

[2] Defendant Atlantic denies the existence of a contract between itself and plaintiffs.

3

plaintiff NOA and defendant IRL did in fact, enter into such a business relationship.[3] Insaf Nehme Aff. ¶ 10.

Plaintiffs would place their orders to purchase from defendants via telephone or email to defendants. Faran Momin Aff. ¶ 5; Nooruddin Momin Aff. ¶ 7. Defendants would acquire, sort, and package the clothing ordered by plaintiffs in Texas, and ship it to Africa from the Port of Houston in Texas. Faran Momin Aff. ¶ 6; Nooruddin Momin Aff. ¶ 9. None of the clothing was ever shipped to North Carolina. Faran Momin Aff. ¶ 6; Nooruddin Momin Aff. ¶ 9. Defendants shipped the clothing using plaintiff NOA's account with Maersk Line in Charlotte, North Carolina. Ehssan Nehme Aff. ¶ 27; Insaf Nehme Aff. ¶ 26.

Defendants would send invoices to plaintiff NOA for these orders at plaintiff NOA's principal office in North Carolina. Ehssan Nehme Aff. ¶ 20; Insaf Nehme Aff. ¶ 20. Plaintiffs generally issued these payments either by check or by wire transfer payments to defendants' bank accounts. Faran Momin Aff. ¶ 9; Nooruddin Momin Aff. ¶ 8. On various occasions, however, defendants requested that plaintiff NOA go to a Raleigh, North Carolina branch of defendants' bank and deposit payment directly into defendants' accounts. Ehssan Nehme Aff. ¶ 22; Insaf Nehme Aff. ¶ 22.

Plaintiffs and defendants had an ongoing business relationship until 2013. During this time plaintiff NOA did over $3 million in business with defendant Atlantic, and over $1.3 million in business with defendant IRL. Ehssan Nehme Aff. ¶ 26; Insaf Nehme Aff. ¶ 25. Plaintiffs and defendants also communicated frequently, sometimes daily, during their respective relationships. Ehssan Nehme Aff. ¶ 16; Insaf Nehme Aff. ¶ 13. These communications were involved the mixture

---

[3] Defendant IRL contends rather that plaintiffs approached it in 2008. Similarly, defendant IRL denies the existence of a contract between itself and plaintiffs.

4

Case 5:14-cv-00100-FL   Document 34   Filed 07/22/14   Page 4 of 17

of goods that plaintiff NOA wanted shipped on its behalf, the availability of those goods to defendants, and the prices that plaintiff NOA would pay. Ehssan Nehme Aff. ¶ 13; Insaf Nehme Aff. ¶ 14. These communications were often initiated by defendants and took the form of emails, telephone calls, and facsimiles directed to plaintiff NOA's office in North Carolina. Ehssan Nehme Aff. ¶ 13; Insaf Nehme Aff. ¶ 14. Additionally, plaintiffs assert that defendants' communications with plaintiffs also included over one hundred different solicitations for additional business. Ehssan Nehme Aff. ¶¶ 18; Insaf Nehme Aff. ¶¶ 18-19. Plaintiffs assert that many of these overtures were successful, noting the expanding volume of business conducted by the parties where from 2011-2013 alone, plaintiff NOA did $2.4 million in business it did with defendant Atlantic. Ehssan Nehme Aff. ¶ 26. Moreover, plaintiffs assert that defendant Atlantic even purchased $21,000 worth of shoes from plaintiff NOA. Ehssan Nehme Aff. ¶ 19; Ehssan Nehme Aff. Ex. A, NOA Invoice for Shoes.[4]

In approximately 2008, defendants and plaintiff NOA reached an agreement for defendants to ship clothing on plaintiff NOA's behalf to Hope Comercio E Industria Limitada ("Hope Comercio"), a company located in Angola.[5] Ehssan Nehme Aff. ¶ 30; Insaf Nehme Aff. ¶ 27;

---

[4] Plaintiffs assert that Amirali Momin, Nooruddin "Nick" Momin, and Anil Momin all solicited additional business on behalf of both defendants. While defendant Atlantic disputes that Amirali Momin (that is, Amirali W. Momin) ever had any authority to act on its behalf, it raises no such dispute with respect to Nooruddin Momin and Anil Momin. Defendant Atlantic further disputes that it initiated business with plaintiffs. In making this argument, however, defendant Atlantic only states that it was plaintiffs who initiated the parties' overall relationship, and second, that defendant Atlantic never bought any shoes from plaintiff NOA and that the invoice filed is fraudulent. See Def. Atlantic's Reply, at 5-8. Nowhere, however, does defendant Atlantic deny that Nooruddin Momin and Anil Momin contacted plaintiffs during the course of the defendant Atlantic's business relationship with plaintiffs to solicit further business, and defendant Atlantic has itself filed documents indicating Anil Momin was one of its members. See Ex. A. to the Suppl. Faran Momin. Aff.

[5] Defendant Atlantic states that it began shipping this clothing to Hope Comercio in 2011. It is unclear whether this represents a dispute between defendant Atlantic and plaintiffs as to timing, or whether plaintiff maintains there was a period of years between the agreement to ship to Hope Comercio and the first shipment made by defendant Atlantic. Ultimately, this potential discrepancy as to timing has no impact on the court's decision on the instant motions. Moreover, both defendants deny the existence of any written contract with plaintiffs regarding the sale or shipment of clothing.

5

Compl. ¶ 10. Plaintiffs later discovered that Walid El Khoury, a partner with plaintiff Nehme in Hope Comercio, was diverting Hope Comercio funds for his personal use, had been improperly undervaluing Hope Comercio inventory, and had committed other acts that damaged plaintiffs. Ehssan Nehme Aff. ¶ 30; Insaf Nehme Aff. ¶ 27; Compl. ¶¶ 11, 16. Plaintiffs informed defendants of Walid El Khoury's conduct, instructed them to cease shipping goods to Hope Comercio, and explained that as a result of Walid El Khoury's diversion of funds, those funds were not available to pay defendants' invoices.[6] Ehssan Nehme Aff. ¶ 30; Insaf Nehme Aff. ¶ 27. Nevertheless, defendants continued their shipments to Hope Comercio. Ehssan Nehme Aff. ¶ 30; Insaf Nehme Aff. ¶ 29. Defendants also ceased shipping to River Way Stores. Compl. ¶ 21; Faran Momin Aff. ¶ 9; Nooruddin Momin Aff. ¶ 11.

**COURT'S DISCUSSION**

A.  Motions to Dismiss for Lack of Personal Jurisdiction

  1.  Standard of Review

As noted above, where the court addresses a Rule 12(b)(2) motion without the benefit of evidentiary hearing, but rather relies only on the motions papers, supporting memoranda, affidavits, and pleadings, the plaintiff's burden is to make a prima facie showing of personal jurisdiction. Carefirst, 334 F.3d at 396. Ultimately, the burden of proof on the plaintiff is one of preponderance of the evidence. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). In this context, the court construes the allegations in the light most favorable to the plaintiff, assumes credibility, and draws the most favorable inferences for the existence of jurisdiction. Carefirst, 334 F.3d at 396. All that is initially required of the plaintiff to make out a

---

[6] Defendant Atlantic Clothing denies having received any communication by plaintiffs concerning the alleged actions of Walid El Khoury or a request to stop shipping to Hope Comercio.

6

prima facie showing of personal jurisdiction are allegations that such jurisdiction exists. Clark v. Remark, No. 92-1682, 1993 WL 134616, at *2 (4th Cir. Apr. 29, 1993).

However, a plaintiff may not rest on mere jurisdictional allegations where defendants have countered those allegations with evidence that jurisdiction does not exist. Id. (citing Barclays Leasing v. Nat'l Bus. Sys., 750 F. Supp. 184, 186 (W.D.N.C. 1990)). Rather, plaintiff must come forward with affidavits or other evidence to counter defendants' arguments, and once both parties have presented evidence, factual conflicts are resolved in favor of the party asserting jurisdiction. Id.; see also McLaughlin v. McPhail, 707 F.2d 800, 806 (4th Cir. 1983) (holding it was not an abuse of discretion to deny jurisdictional discovery when "[a]gainst the defendants' affidavits" a plaintiff "offered nothing beyond his bare allegations that the defendants had had significant contacts" with the forum state). In construing the pleadings, affidavits, and other supporting documents in the light most favorable to plaintiff, the court does not "credit conclusory allegations or draw farfetched inferences." Masselli & Lane, PC v. Miller & Schuh, PA, No. 99-2440, 2000 WL 691100, at* 1 (4th Cir. May 30, 2000) (citations omitted).

2.   Analysis

This court may not assert personal jurisdiction over a non-resident defendant, unless (1) the exercise of jurisdiction is authorized by North Carolina's long-arm statute, and (2) the exercise of personal jurisdiction comports with Fourteenth Amendment due process requirements. Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). "North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause." Id. Thus the statutory inquiry merges into the constitutional inquiry. Id. This constitutional inquiry asks whether the "defendant has such

'minimal contacts' with the forum state that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 (1945)).

> [A] court may assert jurisdiction over a nonresident defendant through either of two independent avenues. First, a court may find specific jurisdiction based on conduct connected to the suit. If the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction. Second, a court may exercise personal jurisdiction under the theory of general jurisdiction, which requires a more demanding showing of continuous and systematic activities in the forum state.

Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 301 (4th Cir. 2012) (citations omitted).

Plaintiffs assert only that this court has specific jurisdiction over defendants. The court finds, unsurprisingly, that plaintiffs have not shown that defendants have conducted "continuous and systematic activities" in North Carolina. This court therefore has no general jurisdiction over defendants. Id.

To determine if it has specific jurisdiction, a court is to consider: (1) the extent to which a defendant purposefully availed itself of the privilege of conducting activity in the forum state, or otherwise invoked the benefits and protections its laws; (2) whether the plaintiff's claims arose out those activities directed at the forum state; and (3) whether exercising personal jurisdiction is constitutionally reasonable. CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 294 (4th Cir. 2009).

The first prong of the specific jurisdiction test is "not susceptible of mechanical application" Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009). Nevertheless, the

8

Fourth Circuit has noted a number of nonexclusive factors courts have considered in the business context, namely:

- whether the defendant maintains offices or agents in the forum state,
- whether the defendant owns property in the forum state,
- whether the defendant reached into the forum state to solicit or initiate business,
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state,
- whether the parties contractually agreed that the law of the forum state would govern disputes,
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship,
- the nature, quality and extent of the parties' communications about the business being transacted, and
- whether the performance of contractual duties was to occur within the forum.

Id. (citations omitted).

In this case, review of the above factors and the facts of this case shows plaintiffs have made a prima facie showing that defendants purposely availed themselves of the privilege of doing business in North Carolina to an extent sufficient to justify personal jurisdiction. First, plaintiffs have put forward evidence that defendant reached into the forum state to solicit or initiate business. Plaintiffs have averred that Amirali Momin, Nooruddin Momin, and Anil Momin contacted plaintiffs no fewer than one hundred times with solicitations for additional business. As is clear from the parties' expanding relationships, these solicitations were effective. Plaintiffs have also averred that Amirali Momin, as president and owner of defendant IRL, initiated the relationship between plaintiff NOA and defendant IRL. See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 451 (4th Cir. 2000) (noting the importance of the fact that plaintiffs, not defendants initiated the contract between the parties); see also Johansson Corp. v. Bowness Const. Co., 304 F. Supp. 2d 701, 705 (D.Md. 2004) ("One of the most important factors is whether the

9

defendant initiated the business relationship in some way." (internal quotations omitted)); CBP Res., Inc. v. Ingredient Res. Corp., 954 F. Supp. 1106, 1109 (M.D.N.C. 1996) (a defendant's reaching out and creating continuing relationships and obligations weighs heavily in favor of finding personal jurisdiction).

Additionally, the relationship between the parties was a long-term one in which significant business was conducted. This factor also weighs heavily in favor of jurisdiction. See McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957) (holding that personal jurisdiction in a suit over life insurance did not offend due process where the life insurance contract had remained in force over many years and payments were sent from the forum state); Chung v. NANA Dev. Corp., 783 F.2d 1124, 1127-28 (4th Cir. 1986) (noting the difference for due process analysis between a single transaction and a "substantial and continuing relationship"); Tate Access Floors, Inc. v. Commercial Structures & Interiors, Inc., Civ. A. No. HAR 93-2807, 1994 WL 149600, at * 4 (D.Md. Apr. 6, 1994) (holding personal jurisdiction was appropriate based in part upon the fact that "the two companies established a long-term, continuing relationship lasting approximately ten years, during which time the parties engaged in multiple transactions involving hundreds of thousands of dollars"). The court also notes that during this relationship defendants used plaintiff NOA's shipping account in order to ship the goods to the River Way and Hope Comercio stores.

Furthermore, the nature, quality, and extent of the parties' communications favors a finding of purposeful availment. The parties engaged in frequent and close communication regarding their business relationship, discussing what goods plaintiff NOA wanted, the availability of those goods to defendants, and the price that plaintiff NOA would pay. These frequent communications regarding the parties' business relationship, and the payments to be made by a North Carolina entity

10

for goods, also weigh in favor of a finding of personal jurisdiction. See Chung, 783 F.3d at 1128 (noting that where "frequent communications passed" between the parties, this fact favors the exercise of personal jurisdiction); see also Consulting Eng'rs, 561 F.3d at 279 n.5 (4th Cir. 2009) ("The analysis must focus on the nature, quality, and quantity of the contacts, as well as their relation to the forum state."). Thus, based upon the above-discussed factors, the court finds plaintiffs have made a prima facie showing that defendants "purposefully availed [themselves] of the privilege of conducting activity in the forum state, or otherwise invoked the benefits and protections its laws."[7]  CFA Inst., 551 F.3d at 294.

The next issue is whether plaintiffs have made a prima facie showing that their claims arise out of defendants' North Carolina-related business transactions. CFA Inst., 551 F.3d at 294. Plaintiffs have put forward evidence, in the form of affidavits, of contracts between the parties for defendants to purchase and ship goods on behalf of plaintiff NOA. Plaintiffs' claim that defendants failed to ship – or cease shipping – as directed by plaintiffs under the alleged contract. See Compl. ¶¶ 19-21 Similarly, plaintiffs have put forward evidence that defendants began shipping to Walid

---

[7] While many of the facts material to this determination are disputed – and the court has resolved these disputes in plaintiffs' favor for purposes of the instant motion – it appears to the court at this point that even the undisputed facts might themselves support this finding. Despite the fact that defendants dispute who initiated the relationship, there is no dispute that each defendant was in a multi-year relationship with plaintiff NOA during which a substantial amount of business was transacted. Nor do defendants dispute that they communicated frequently, often even daily, with plaintiffs during this lengthy relationship regarding goods that plaintiff NOA wanted shipped on its behalf, the availability of those goods to defendants, and the prices that plaintiff NOA would pay. It is also undisputed that defendants availed themselves of plaintiff NOA's shipping account with Maersk in Charlotte, North Carolina, to ship the goods purchased to River Way Stores and Hope Comercio, and that use of this account led to still further communication between the parties regarding to shipping and payment issues. Further, it is undisputed that defendants at times had plaintiffs deposit payments into a North Carolina branch of defendants' bank. Finally, although defendant Atlantic makes the conclusory assertion that it did not initiate business with plaintiffs, it nowhere denies that at least one member of its company repeatedly approached plaintiffs during defendant Atlantic's eight-year relationship with plaintiff NOA to solicit additional business from plaintiff NOA. These facts alone may very well be sufficient to support the exercise of personal jurisdiction over defendants. See McGee, 355 U.S. at 223; Chung, 783 F.2d at 1127-28; Cortex Surveillance Automation, Inc. v. Security Integrators and Consultants, Inc., No. 1:05-CV-562, 2006 WL 994951, at *3 (M.D.N.C. Apr. 12, 2006) ("[A]n ongoing relationship between the parties comprised of numerous transactions[] strongly suggests personal jurisdiction.").

11

El Khoury and Hope Comercio at plaintiff NOA's instruction. Plaintiffs claim that defendants subsequently induced Walid El Khoury to breach his partnership with plaintiff Nehme by proposing he deal directly with defendants and exclude plaintiff NOA entirely. See Compl. ¶ 22. Accordingly they have met their burden to show their claims arise out of or relate to defendants' contacts for purposes of personal jurisdiction. See Polyquest, Inc. v. Vestar Corp., No. 7:13-CV-23-F, 2014 WL 496494, at *6 (E.D.N.C. Feb. 6, 2014) (detailing the apparent broad view this circuit takes of the requirement that claims arise out of or relate to a defendant's contacts with a forum).

Finally, the court finds that the exercise of personal jurisdiction over defendants is constitutionally reasonable. CFA Inst., 551 F.3d at 294. This third prong allows the court "to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." Consulting Eng'rs, 561 F.3d at 279. These factors include:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

Id. "More generally, our reasonableness analysis is designed to ensure that jurisdictional rules are not exploited in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." Nolan, 259 F.3d at 217. Here, defendants have shown that they are capable of defending in this state. Considering also the plaintiff's interest in obtaining convenient relief and North Carolina's interest in providing a forum for the resolution of this conflict which involves parties from this state, the court finds that personal jurisdiction is constitutionally reasonable.

B.  Motion to Dismiss Due to Improper Venue

Defendants move pursuant to Rule 12(b)(3) to dismiss for improper venue. The relevant statute for determining whether venue is proper is 28 U.S.C. § 1391. Pursuant to that statute:

> A civil action may be brought in--
>   (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>   (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>   (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). A corporate defendant is deemed to "reside" in any district where personal jurisdiction would be proper. 28 U.S.C. § 1391(c)(2). Because the court has determined at this time that plaintiffs have made a prima facie showing that personal jurisdiction over defendants is proper in this district, venue is also proper pursuant to sections 1391(b) and (c)(2).

C.  Motion to Transfer Venue

Finally, defendant Atlantic moves, in the alternative, to transfer venue under 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of Texas. Pursuant to 28 U.S.C. § 1404(a), a court may, for the convenience of the parties and in the interest of justice, order the transfer of a case to any district where it might otherwise have been brought. The question of transfer under § 1404 is one committed to the sound discretion of the district court. <u>Southern Ry. Co. v. Madden</u>, 235 F.2d 198, 201 (4th Cir. 1956).[8]

A motion to transfer demands a holistic analysis. The court need not give equal weight to each factor; the transfer analysis is qualitative, not quantitative. <u>Coffey v. Van Dorn Iron Works</u>,

---

[8] No party disputes that the first requirement of section 1404(a) is met where defendant Atlantic's proposed forum, the Southern District of Texas, is a district in which the case might have been brought.

13

796 F.2d 217, 219-20 (7th Cir. 1986); Datasouth Computer Corp. v. Three Dimensional Tech., Inc., 719 F. Supp. 446, 450 (W.D.N.C. 1989). Much necessarily must turn on the particular facts of each case, and the trial court must consider and balance all the relevant factors to determine whether the litigation would proceed more conveniently and the interests of justice be better served by transfer to a different forum. Coffey, 796 F.2d at 219-20 (citing 15 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3847 (3d ed. 2010)).

While the analysis is case-specific, courts often consider a range of factors, including: plaintiff's initial choice of forum; the residence of the parties; the ease of access to the sources of proof; the convenience of the parties and witnesses; the cost of obtaining the attendance of the witnesses; the availability of compulsory process; the possibility of a view by the jury; the enforceability of a judgment; other practical problems that make trial expeditious and inexpensive; the interest in having local controversies decided at home and at home with the state law that governs; and the interests of justice. See Landers v. Dawson Constr. Plant, Ltd., Nos. 98-2709, 98-2763, 1999 WL 991419 at *2 (4th Cir. Nov. 2, 1999); Hardee's Food Sys. v. Rosenblatt, 44 F. Supp. 2d 767, 770 (E.D.N.C. 1998).

Plaintiff's initial choice of forum is an important factor and generally should not be disturbed unless the balance is tipped strongly in favor of defendants. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981) (discussing choice of forum in the context of *forum non conveniens*); Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984). Even if the plaintiff's choice of forum is inconvenient for defendants, "[t]he court should refrain from transferring venue if to do so would simply shift the inconvenience from one party to another." Regent Lighting Corp. v. Galaxy Elec. Mfg., Inc., 933 F. Supp. 507, 513 (M.D.N.C. 1996); see also Scheidt v. Klein, 956 F.2d 963, 965

14

(10th Cir. 1992). Nonetheless, the weight to be given to a plaintiff's choice of venue varies with the significance of the contacts between plaintiff's chosen venue and the underlying cause of action. See Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1258 (4th Cir. 1991) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30-31 (1988)); Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc., 702 F.Supp. 1253, 1256 (E.D. Va. 1988). If, however, "a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight." Cognitronics Imaging Sys. v. Recognition Research Inc., 83 F.Supp.2d 689, 696 (E.D.Va.2000); see also Parham v. Weave Corp., 323 F. Supp.2d 670, 674 (M.D.N.C. 2004); Telepharmacy Solutions, Inc. v. Pickpoint Corp., 238 F. Supp.2d 741, 743 (E.D. Va. 2003).

In this case, the clothing purchased by plaintiffs from defendants was acquired, sorted, and packaged in Texas, and shipped from Texas to Africa. Plaintiffs allege that defendants breached contracts by failing to ship clothing to River Way Stores and by shipping that clothing to Hope Comercio despite plaintiffs' instructions to the contrary. Moreover, plaintiffs allege that defendants communicated with Walid El Khoury from Texas to induce him to breach his partnership with plaintiff Nehme. Thus, the court finds that the weight accorded to this factor is lessened somewhat. See Ion Beam Applications, S.A. v. Titan Corp., 156 F. Supp. 2d 552, 563 (E.D. Va. 2000) (noting it is proper to consider if few events giving rise to a plaintiff's cause of action occurred in plaintiff's chosen forum in determining the weight given to plaintiff's choice of forum).

Nevertheless this factor is still entitled to substantial consideration for two reasons. First, this forum has some relation to the causes of action where substantial business was transacted here. Defendants entered into a long-term business relationship with an entity here – plaintiff NOA – and

15

frequently directed communications at plaintiffs here. Defendants' communications to and relationship with this forum were necessary to the fulfillment of any alleged contractual obligations, and any damage from defendants alleged wrongs was felt here. Second, plaintiffs reside in this forum. See Bd. of Trs., Sheet Metal Workers Nat'l., 702 F. Supp. at 1256 ("[O]rdinarily, a plaintiff's choice of his home forum for venue purposes is given greater weight than a plaintiff's choice of a foreign forum."). Thus, the court finds this factor weighs heavily against transfer.

In consideration of the next several factors – the residence of the parties, ease of access to sources of proof, convenience of the parties and witnesses, and cost of obtaining attendance of witnesses – the court finds these factors are neutral. While defendants and their witnesses and documents are in the Southern District of Texas, plaintiffs and their witnesses and documents are in North Carolina. Thus, these factors do not favor a transfer. See Regent Lighting Corp., 933 F. Supp. at 513 ("[t]he court should refrain from transferring venue if to do so would simply shift the inconvenience from one party to another.").

Finally, the court notes that while Texas has an interest in resolution of a suit involving its citizens and many acts occurring therein, North Carolina also possesses "a valid interest in the resolution of the grievances of its citizens and businesses." CFA Inst., 551 F.3d at 297.

Thus, upon consideration of the above factors, the court finds that a transfer is inappropriate, and denies defendant Atlantic's motion to transfer venue.

## CONCLUSION

Based upon the foregoing, defendant Atlantic's motion to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, motion to transfer venue (DE 8), and defendant International Rags, LTD's ("IRL") motion to dismiss for lack of personal jurisdiction and

16

improper venue (DE 21) are DENIED.  The stay of this case is hereby LIFTED and a separate case management order will follow.

SO ORDERED, this the 22nd day of July, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge